Next case this morning is 19-1091 United States v. Robert Mendoza-Sanchez Thank you Good morning and may it please the Court I'm Chrissy DeMasso and I represent Roberto Mendoza-Sanchez Good morning I'd like to reserve three minutes for rebuttal You may Thank you As this Court recognized in Gonzalves-Ponce, Pereira was animated by the fact that informing a non-citizen of the time and place of his removal hearing was an essential function and that the omission of this information was not a trivial or ministerial defect. In Gonzalves-Ponce, this Court also held that the BIA's decision in Bermuda's Cota  under Bermuda's Cota, an undated NTA, vests an immigration judge with jurisdiction over removal proceedings so long as a notice of hearing specifying this information is later sent to the non-citizen. This two-step process was not followed here. Mr. Mendoza-Sanchez was served in person with an undated notice to appear. A hearing notice dated May 28, 2014, announced that he would have a hearing on June 4, 2014. This notice was not properly or timely served on Mr. Mendoza-Sanchez. The certificate of service shows that it was given to an attorney or representative, but also on that form there's a field for the attorney or representative's name and a type name is crossed off there and no additional name has been added. Both the statutes and the regulations demand personal service to the non-citizen of this information and if such service is not possible, service must be made on counsel of record. There's no suggestion here that that service was made. Although Mr. Mendoza-Sanchez's appearance was guaranteed by his detention, he missed the chance to have other important rights. The statute requires that there's 10 days notice between the notice to appear, presumably dated notice to appear and the actual hearing, and this time, which Pereira recognized as very important, is to give the non-citizen time to properly prepare for the hearing, to find an attorney, and to ensure that that attorney is also properly prepared. This time and place information is so fundamental and so critical that Mr. Mendoza-Sanchez does not have to meet the requirements of 1326D in order to pursue this claim. Do I recall correctly there's an argument, though, that the lack of service was not raised or perfected below? So the government didn't discuss my argument about the lack of hearing notice in its brief. It mentioned, you know, it writes, there's a section in sort of the factual background where the government just says the defendant received a notice of hearing But there's no more sort of specific argument about, you know, this is the standard that should apply because this wasn't raised below. I would say that any fact findings that were made below are clearly erroneous. Let me make sure, Mr. Mastrom, I'm understanding. I think what I hear you saying is a double waiver here that undoes the first waiver. I think you're saying, yes, your client did not argue this point below, but then you're saying, B, the government's red brief doesn't take me to task for not having argued below so we can ignore the waiver. That's part of the argument. But I do also think that this information is so critical and the error is so important. And also at the time that client raises this issue below, Pereira and everything circling around it is still very much a moving target. And now there's, you know, almost every circuit has weighed in on things now. And now we are at a point where we're looking at hearing notices. And I think that the focus below simply was not in that place. But if you look at the hearing notice, it's facially clear that it was not served on Mr. Mendoza-Sanchez and that there's no proper service on an attorney that would ensure that he would have gotten this information and been able to prepare or find another attorney or find an attorney at all. It's unclear from the record who could then represent him at that upcoming hearing. And he did appear at the hearing, though. He was detained. Which meant, yes, they brought him to the hearing. Right. So, you know, it's – So what you're saying – Pereira talks about it. The rule talks about it. It's not simply about appearance. It's mostly about the opportunity to prepare, to make sure that you have an attorney if you're going to be represented, to make sure that that attorney has the time to find out about your case, figure out what needs to be done, prepare any claims for relief that you might have. And that's actually mentioned in the statute and in Pereira, that for that opportunity to be meaningful. Haven't we held that – even if there's – I thought we held that a deficient notice to appear under Pereira, if you go ahead and attend the hearing and don't raise or object to the adequacy of the notice to appear, that you then have lost that challenge. I don't think that that's correct, especially in a case where someone was detained, because the right that's at issue here is not solely the right to appear. And that's specific in the statute and in Pereira, that we're talking about the right and the ability to find a lawyer, be properly prepared, and for that opportunity to be meaningful, you not only have to get this notice, but that's also where the 10-day time period comes from. There's more to – because many people who are in removal proceedings are detained, and there's more to it than simply appearing by virtue of the fact that the government agency will bring you. They could just – for all the record shows, they could have just pulled him out this morning and said, hey, we're off to your hearing. And he would have then appeared, but his ability to meaningfully prepare, to meaningfully have an attorney who knew what was going on, has been completely compromised in a way that simply cannot accord with due process. But the notice – he was served with a notice to appear. So the notice to appear is served in person and he signs it. Right. That has no date on it. So that's deficient under Pereira for lack of a date, but in terms of putting him on notice that he needed to get a lawyer, how is that in any way less adequate than a compliant notice to appear? So Pereira talks about that, and it specifically talks about how if an undated notice to appear is sufficient and there doesn't then need to be – that if an undated notice to appear is sufficient and that's sort of all that has to happen, then you could have someone who sort of knew that these proceedings were happening out there but didn't know when and didn't know whether they needed to find someone, and you could have sort of two alternate situations that would both be bad. You could have someone who got an undated notice to appear in the very next day, got a notice for hearing that they were having a hearing in three days and they had a very compressed timeframe. You could also have someone who got a notice to appear and spent years just with this notice to appear hanging out there and didn't have an attorney sort of on notice that, no, now, you need to focus on my case and prepare for my case now. And the fact that Mr. Mendoza-Sanchez is detained should not impact any of the rights accorded to him in terms of having the same amount of time, the same opportunity to prepare that anyone would have. I do also want to briefly address this Court's footnote about jurisdiction in Gonzales-Ponce, footnote three, about whether the agency can set up rules to govern its own jurisdiction, and I would just like to suggest that I think the question in that footnote is too broad, that this doesn't have to be a ruling about broad agency powers and what an agency can broadly do, that this is a question, a very narrow question, of can the agency set up this particular rule, this particular rule being as this Court adopted Bermuda's Cota. In order to start a court proceeding, there have to be some rules for what starts jurisdiction, what makes that case actually happen. And while there may be some rules that the Attorney General could not promulgate, for example, the Attorney General likely could not promulgate a rule that said we only have jurisdiction over non-citizens from Canada, that's not this case, and this case doesn't need to be that broad. There's a narrow and important space here. This Court determined that the statute does not set out jurisdictional rules. So there's a gap there, and the agency can and must fill that gap. There need to be rules to explain jurisdictional rules. How would you fill it? How? I'm sorry? What are you proposing? I'm proposing that in the current, given this Court's current holdings, that the gap has been filled by Bermuda's Cota, that the BIA has decided that jurisdiction vests by a two-step process, that a jurisdiction vests if an undated NTA is followed by a properly served hearing notice. And then since here there was no properly served hearing notice, jurisdiction did not vest, the order is a nullity, and it cannot serve as the basis for his criminal conviction, and he should have been allowed to withdraw his guilty plea. Could you return to the 1326, since you've got that separate barrier to get over? He does, when all this comes to bear, he then eventually actually pleads guilty to illegal banditry. And so he's asking now to withdraw that. The argument that you're making now, having tried to switch horses in light of Arcanglave's, Ponte's decision, wasn't that argument available to him at the time that he pled guilty? The 1326d argument, or the? No, the argument that he didn't get notice of hearing, and therefore wasn't able to get a lawyer, so just got dragged to the hearing, so shouldn't have been held to have given up anything. Pereira substantially changes the landscape, and that happens after he pleads guilty. And, you know, the standard for withdrawing a guilty plea is for any fair and just reason, and it's supposed to be liberally constructed, people are supposed to be, this is a standard that's sort of supposed to be in favor of the person who pled guilty. But are you really relying on Pereira? Because your refined argument here really rests on the fact that he just never got any, that he never got any notice of his hearing, whether it was in the NTA or the NOH. Well, without Pereira, you have a situation where an undated notice to appear is sufficient, so nothing else that comes after matters. So once you have Pereira and the undated notice to appear falls as the sole? Well, even before Pereira, no court had held that if all you got was a notice to appear that didn't have a date, and then they never told you the date, you were hardly responsible for showing up at a hearing that you had no idea when it was. I think that it all, everything in this case flows from Pereira, because you, Pereira happens, and without Pereira, you don't get Bermuda's Cota. And, you know, he, because he's detained, he does appear. So sort of the complications about what he could claim and when he could claim it don't become apparent until Pereira. And the, being able to withdraw your plea is, like I say, it's any fair and just reason. And here where he is saying, look, this Pereira case came along and it led to this series of dominoes that made me realize, may I finish? You may finish. Thank you. That made me realize that my, the court did not have jurisdiction over me. It's still at its base a jurisdictional argument. I should be allowed to raise that. My order was a nullity. This is of such import that I should be allowed to withdraw my plea and my case should be dismissed. Thank you. Thank you. Good morning. Good morning. Seth Aikman for the United States. What I heard in the argument that was just presented was sort of the first part was there was some unfairness alleged because I didn't get the notice. And then the immigration court was entirely without jurisdiction. Those aren't the same thing. So to the extent there's an argument about fairness, I didn't know of the hearing, I couldn't get my lawyer, I was brought here, those are the kind of arguments that can be brought through 1326D. Now, as I understood the blue brief, the argument was we can't meet the requirements of 1326D to collaterally attack the removal. What we're saying instead is the removal is a complete nullity because the immigration court entirely lacks subject matter jurisdiction because the notice to appear did not have a date in time. And the question was are we talking about the statutory notice to appear or the regulatory notice to appear? And the question in this court said that in the Conclavus case that the regulatory notice to appear requirement is the one that governs and it doesn't require that there be a date and time in the notice to appear. So the immigration court did have... So it doesn't require the second step? It doesn't require the second step. In other words, did we opine on whether if it was never followed up with a notice of hearing? The court at the end talks about Bermudez-Cotes, but the entire analysis was that the immigration court has subject matter jurisdiction if a notice to appear under the regulations was filed. Now, there can be relief offered to an alien who doesn't get a proper notice to appear under the statute. Those concepts are separate. That's what I thought was most important about Conclavus. And what makes this a little confusing is, unhelpfully, the same label has been used for two different things. The first thing is a notice to appear under the statute. That has to be sent to the alien. That has to provide date, time, place. And there may be arguments that can be made. As one of the circuits said, it's not to naysay the importance of that document, but it's not the document that commences the case. The document that commences the case is the regulatory notice to appear, and that document doesn't have to have the date and time. That's what Conclavus says. That doesn't mean that there weren't arguments that could have been raised about not getting certain kinds of notice, but that's not a matter that makes 1326D disappear, which is the argument that the defendant wants to make here. And he concedes he can't meet the requirements of 1326D. Now, so I think the Conclavus case is dispositive of this appeal, and I raise other arguments that go to the question of subject matter jurisdiction, because the reason they have to frame it that way is Congress said the only way to collaterally challenge a removal order is to meet the 1326D requirements. Since they can't do that, they're using the doctrine that we talk about in courts that says that when a court acts without subject matter jurisdiction, its order is a nullity. The argument then is we're abusing from 1326D's requirement because this was a nullity, and I made several arguments in my brief as to why that is not right. The first is this is not a court. This is an administrative agency, and when it makes a mistake, when it does something wrong, there is no distinction that the law recognizes between subject matter jurisdiction mistakes and other mistakes. They're mistakes, and they can be fixed by courts. They're acting outside their enabling statutes. That makes their action ultra-viris. But the same way that what courts have said, and the follow-up to that is if you don't raise your complaint as to the agency's subject jurisdiction, you've waived that claim. Arguably here, this whole notion, this borrowing of the Article III concept that an order entered without subject matter jurisdiction is a nullity has absolutely nothing to do with this case decided by an agency. Secondly, as several other courts of appeals have held, this whole area is not about subject matter jurisdiction, even assuming that's a relevant concept here, because subject matter jurisdiction is the power of the court or here Article I court to decide, and this is a claims processing rule. This is just telling you how to start a case. A case gets started in an immigration court with a notice to appear, just like a case in a federal court gets started with a complaint. But that doesn't go to the subject matter jurisdiction, and if you look at the regulations we're talking about, they specifically say their whole purpose is for the prompt and orderly dealing with immigration proceedings. It's all about the manner of procedures. So it's not a subject matter jurisdiction rule. So ultimately what we have here is an argument. So first of all, the district court made an express finding that the defendant was served from the district court's opinion. The government servant, Dovich, is with a notice of hearing that included the date and time for the hearing, which was June 4, 2014. That's the district court's finding. Now the argument, my colleague has pointed out some features about the document that maybe he didn't receive it. There's no affidavit from him saying he did or he didn't. We just have the features that has been pointed out. He did show up at the hearing. There was a hearing. But he was in detention. But he showed up at the hearing. I'm not saying he... He was brought to the hearing. He was brought to the hearing. So it doesn't indicate that he knew before someone took him out of his detention. I think on this record you can't say whether he did or he didn't know. I think that's the bottom line because certain features have been pointed out. There's nothing that I'm aware of from the defendant himself. The district court made a finding. He was at the hearing. But that all goes to, and I guess that's my final point, that all goes to the fairness of the proceeding. And 1326D is a provision that suggests that if in certain ways your removal proceeding was fundamentally unfair, you can challenge that in your criminal prosecution. That's the point of 1326D. The defendant says, I can't meet the requirements of 1326D. Exempt me from that because I have these subject matter jurisdiction arguments that just make me immune from Congress' channel, the way it channeled these kind of fairness arguments. That, Your Honor, isn't how it works. 1326D was the avenue here. There is no subject matter jurisdiction problem. And, therefore, the court got it right by denying the motion to withdraw. If there are no further questions, I'll rest on the brief. Can you tell me, ma'am, why the issue of subject matter jurisdiction in this case hasn't been decided by us in the Gonsalves case? Because Gonsalves deals with the situation where there was no dispute that the noncitizen got the notice to appear and the hearing notice. And I think the court quite clearly, in Gonsalves' points, says Bermuda's quota is reasonable, that that is the agency has determined how it takes jurisdiction, and it's this two-step process. That, to me, is clear in there, that that's what is the current law. And so we need to now look at whether the two-step process was followed here. And I do also want to be completely clear that I am arguing that this order of deportation was a complete nullity. Fairness concerns undergird this whole case. That's not going away. But I am arguing that the court was completely with it. The immigration court was completely without jurisdiction to issue the deportation notice because of these failures. And what about the district court finding that there was service and then the lack of any affidavit claiming there was no service? So the district court, again, no one is really talking about there's a difference between service and just sort of saying he received it or he knew. There's no district court explicit finding he was properly served with this. It was handed to him by a correctional officer or it was handed to his lawyer who then handed it to him. And I think that any finding that the district court did make about whether or not he was properly served with that document is clearly belied by the face of the document. But then the other, if his whole complaint is, hey, I was never served, I didn't know I was going to have a hearing until they dragged me out of his cell and put me in the hearing. The one person in the world who would know most clearly that he wasn't served is him. And so you would sort of expect to see in the record, which I think goes back to some of the attempts to adjust to a changing tableau of law throughout the case. It was not part of the record below. But I also don't think that this is ultimately a question of whether or not Mr. Mendoza Sanchez himself actually knew. This is a question about following important jurisdictional procedures that ensure that across the board of all of these cases that people are getting what Pereira called the most important piece of information. In this case, that all hinges on the contention being made on the appeal that he wasn't served. Yes, but it's about the service, which is sort of this generalized procedure that needs to be followed and not so much about what happened to this individual that Pereira is talking about. These are procedures that have to be followed to ensure that across the breadth of cases people have time and date information. Thank you. Thank you.